This is a divorce case.
The husband has appealed and contends that the trial court erred in awarding all of the household furniture and effects to the wife, in ordering the payment of certain indebtednesses from the sales proceeds of their residence and in limiting the duration of the wife's periodic alimony payments to the husband.
Each of those issues was a matter which was within the sound judicial discretion of the trial court, whose judgment is presumed to be factually correct upon appeal and will not be altered by this court if the judgment was supported by legal evidence in the ore tenus trial before that court unless the judgment is unjust or palpably wrong. Keleher v. Keleher,389 So.2d 1160 (Ala.Civ.App. 1980); Cobb v. Cobb, 352 So.2d 1384
(Ala.Civ.App. 1977); Nix v. Nix, 348 So.2d 802 (Ala.Civ.App. 1977). We are required to review this case under those legal precepts.
Generally, as to the property division, the trial court ordered that the home of the parties be sold, that certain debts be paid from the sale proceeds, and that the balance of those proceeds be divided equally between the parties, with the evidence indicating that each would receive a net of approximately $63,000 therefrom. The house was constructed upon a lot given to the parties by the wife's mother, the lot presently having an appraised value of $40,000. The wife's father made available $40,000 to them and they borrowed an additional $40,000 to construct the home.
The court awarded the furniture to the wife and found that "substantially all of the household furniture and effects were gifts from the plaintiff's (wife's) parents or acquired with money that plaintiff (wife) received as beneficiary of life insurance policies upon the death of her father. . . ."
Outside of the house and furniture, the ownership of the balance of the assets belonging to either party was not disturbed by the judgment. Hence, each party retained the same right, title, claim or interest therein which they already possessed. Coffelt v. Coffelt, 390 So.2d 652 (Ala.Civ.App. 1980). Therefore, the husband was left with the following undistributed assets: an office building which he testified was worth between $30,000 and $50,000, his I.R.A. account of $11,000, mutual funds of $11,000 and his one-half interest in a television cable device which prevents breaking such cables during their installation, as to which he has sought a patent. We cannot consider a fact that was not in evidence before the trial court, namely that after the rendition of the judgment the husband sold the office building for $90,000 to the television cable company which is owned by one of the wife's trusts. Wilger v. State Dept. of Pensions and Security,390 So.2d 656 (Ala.Civ.App. 1980).
As to property not disturbed by the judgment, the wife retained her automobile as to which she must pay an outstanding debt against it of $8,000. She also keeps her interest as a beneficiary in two trusts which were established for her benefit by her father. In one of the trusts she has only a life estate, and, in the other, some of its corpus will be distributed to her if a named third party predeceases her. In the meantime, distribution of funds from both trusts is made to her which, over the past four years, has averaged a total of $44,000 per year.
Specifically as to the furniture, she testified to and filed itemized lists of furniture and she detailed its sources as to individual pieces of furniture as being almost entirely received either as gifts from her parents, or *Page 76 
as purchases by her from life insurance proceeds received by her upon her father's death or from her trust income. The husband did not, with any degree of specificity, dispute her evidence, but he generally asserted that some of the furniture was purchased from joint funds and that none of it had been given to them by the wife's family. Admittedly, the evidence was in conflict as to the source of the furniture. The wife was granted the custody of the youngest daughter, the only child who has not reached majority age. The furniture was appraised at $14,225.
Even if we assume that section 30-2-51 of the Code of Alabama of 1975 applies as to these household goods, we find no trial court abuse of discretion in awarding all of it to the wife. In our review we must look at the whole picture, not just at one item. While the parties did not receive equal parts of either the total property or of the furniture, the division of property as a whole was not inequitable. Keleher v. Keleher,supra; Cobb v. Cobb, supra; Nix v. Nix, supra.
In addition to the balance due on the house mortgage, the trial court's judgment ordered the payment of three other debts from the sale proceeds of the jointly owned home of the parties. One of those debts of over $15,000 was a note of the husband to his employer, the television cable company which is wholly owned by the trust under which the wife is the sole beneficiary during her lifetime. The second note was the husband's to a bank for almost $12,500. The third debt was the wife's note to a bank for $6,000. In his brief the husband admits that the evidence is clear that the first two of those obligations were incurred by the parties. There was evidence that the $6,000 third debt was incurred by the wife to pay some of the school tuition for some of the children, to enable the parties to take a daughter to Washington to school and for the wife's trip to Europe.
Apparently the husband did not owe any other debts except those which will be satisfied when the house is sold. The wife did owe some accounts as well as the automobile note, the $6,000 note and her portion of the house mortgage indebtedness. Some weight must be given to the fact that, in effect, the wife was ordered by judgment to provide for the support and maintenance of the youngest daughter. Additionally, she is continuing to provide funds to meet the college expenses of an adult daughter.
The trial court did not abuse its discretion in ordering the payment of the enumerated debts from the funds which will be received when the house is sold.
Our alimony statutes now extend to the husband the same rights as to alimony as were previously granted exclusively to the wife. Ethridge v. Ethridge, 379 So.2d 87 (Ala.Civ.App.),cert. denied, 379 So.2d 89 (Ala. 1979).
The factors which may be used in determining the amount and duration of an alimony award to either spouse include the future earning prospects of the parties, their training, education, experience, and job or professional history and earning record, their ages, health, station in life, the length of the marriage, the misconduct of the parties, if any, and any other matter which would be material to the issues and of assistance to the court in reaching a just and fair decision upon the matter in controversy. Warren v. Warren,386 So.2d 1166 (Ala.Civ.App. 1980).
With regard to a husband's award of alimony, the Florida court in Pfohl v. Pfohl, 345 So.2d 371 (Fla.App. 1977), aptly stated the following:
 Quite properly, these are criteria of the broadest nature, not susceptible to a precise formula automatically translatable into dollars and cents. We are dealing with a tragically human problem which touches peoples' lives during a period of immense personal crisis. One cannot dispense substantial justice in such explosive cases as if the answer lies in a computer or a rigid rule book. Mathematical exactness is neither possible nor desirable. The trial court of necessity has a wide discretion to apply the established criteria in fashioning a fair and equitable alimony *Page 77 
award in the infinite variety of cases which come before it. Absent a showing that the trial court exercised this discretion arbitrarily or unfairly, alimony awards made pursuant to such criteria must be sustained on appeal. . . .
 Although in most marriages, the husband remains the sole provider of the family, with the wife making the home and raising the children, if any, an increasing number of marriages do not fit this mold. In some marriages, both parties work and jointly support the family, although the degree of support by either party may vary. In others, the wife is the sole support of the family unit with the husband fulfilling some noneconomic role. It is in these nontraditional type marriages where the question of alimony for the husband may arise.
345 So.2d at 375, 376.
In Alabama, the authorization for an alimony award to a husband was occasioned by the equal protection clause of the federal constitution. Presently, the same laws govern both spouses, without any discrimination between the sexes, as to the entitlement to alimony, its amount or its duration.
In the instant case, the husband is forty-eight years of age and enjoys excellent health. He completed three and one-half years of college where his major was in mechanical engineering. The parties married in 1953. The wife worked for only five months during the marriage, while the husband has been constantly employed except for a short period of time while attending college. She is forty-five years of age.
The husband must be esteemed in the cable television field by his peers, for he has served as president and director of the Alabama Cable Association. He holds a class 1 operator license, which qualifies him to be a station engineer. For many years he has very capably and successfully managed the television cable company so owned by one of the wife's trusts. From 1964, when he became its manager, to the present, that company's customers have increased from sixty-five to over ninety-four percent of the homes in its franchise area. Financially, he turned this company from a losing venture into a modern going concern which earned a $46,000 profit in 1980. Its assets have dramatically increased. In 1980 his annual salary was $44,000 and he, additionally, received a bonus of $8,000.
Much money was expended in each recent year on personal or family living expenses, but the husband testified that his personal expenses were most frugal under the circumstances when compared with what he considered to be great extravagances by his wife.
The testimony was clear that he would no longer be retained in his capacity as president of the company since the wife desired to bring their youngest son into the business and the son and the father were most incompatible. The wife and her counsel, however, made assurances to the trial court that the husband would be retained as a consultant with the company for one year at a salary or fee of $30,000.
The July 16, 1981 divorce judgment contained the following provisions regarding the husband's periodic alimony from the wife:
 It further appearing to the satisfaction of the court that the defendant is an able-bodied man, in good health, able to work and has been working; that the defendant has been working for several years for TV Cable Company, a business held in trust for the plaintiff, that he has been adequately and substantially paid for his services, but it further appearing to the satisfaction of the court that in the event that he is discharged he should have a reasonable time to locate another job and in the event he is unemployed he is entitled to periodic alimony as hereinafter provided. . . .
 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event the defendant is unemployed at any time within the next three years from the date of this decree, the plaintiff shall pay the defendant periodic monthly payments of alimony, during any monthly period of unemployment, of One Thousand Two Hundred Fifty ($1,250.00) Dollars per *Page 78 
month, but said periodic monthly payments of alimony shall not exceed a total of $30,000.00 nor shall any monthly alimony payment be payable after three years from the date of this decree.
The husband has gone outside of the record in an attempt to show that he was fired from his position with his employer on August 1, 1981, and he contends that the trial court was misled and, consequently, fashioned its alimony judgment in strict reliance upon the assurances made to the trial court of his retention as a consultant for one year. Again, we cannot consider such extraneous matter. Wilger v. Dept. of Pensionsand Security, supra. If the husband had a complaint in that regard, it was a matter that could have been readily called to the attention of the trial court by an appropriate post-trial motion, for only fourteen days elapsed between the date of the judgment and his alleged firing. No such motion was filed. We do not know and, outside of a pure guess, we cannot ascertain from the record before us that the judgment was so framed because of any such assurances.
The amount of the award of periodic alimony, which is not contested, and the duration of the required payments to the husband allow an adequate, ample and reasonable length of time and opportunity for him to obtain suitable permanent employment. Clearly, he is an experienced and most capable cable television system executive. The limited time for making the alimony payments possibly prevents unnecessary and prolonged economic dependence upon an ex wife by a former spouse who is, without question, capable of supporting himself. We do not discern from his testimony that the husband desires, or even intimates, that he is entitled to a lifetime of alimony from the wife.
The duration of his entitlement to periodic alimony is reasonable under the presented evidence and it was a matter within the sound discretion of the trial court. Keleher v.Keleher, supra. The judgment of the circuit court was not palpably wrong and no abuse of judicial discretion occurred in that regard.
We would be remiss if we failed to commend the attorneys for both parties for favoring this court with exceptionally scholarly, excellent and most helpful briefs.
We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the 1975 Code of Alabama and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.